# O. S. RICHARDSON *et al.*

*v.*

# E. K. AKIN.

1. REMEDY *of creditors of corporation against stockholders.* Since the act of 1872, concerning corporations for pecuniary profit, took effect, a court of law has no jurisdiction of a suit by a creditor of such a corporation against a stockholder, unless his debt accrued before the act of 1872 took effect. The remedy, if any, is in equity.

2. CONSTITUTIONAL LAW—*change in remedy.* The legislature had the power to repeal so much of the act of 1857, relating to private corporations, as makes the stockholders liable, personally, to creditors to the amount of their stock. There was no vested right in such provision of the law. A law changing the remedy for the collection of a debt, is not liable to any constitutional objection.

3. VESTED RIGHT—*what is.* A right can not be considered as vested unless it is something more than a mere expectation, and has already become a title, legal or equitable, to the present or future enforcement of a demand or a legal exemption from a demand made by another.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. PAGE, PLUM & FRY, for the appellants.

Mr. C. P. GARNSEY and Mr. GEORGE S. HOUSE, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Assumpsit was brought by appellants, against appellee, as a stockholder in "The Illinois Steam Forge Company," a corporation organized under the corporation law of 1857. The appellee became a stockholder in that incorporation to the amount of twenty-five shares of stock, of $100 each, which he fully paid up in 1869. The indebtedness which is sued for was incurred by the corporation in 1873, in the months of October and November.

On motion of appellee the court below dismissed the suit for want of jurisdiction; and this ruling is assigned for error.

The question is, has a court of law jurisdiction in an action by the creditor of a corporation, for a debt incurred since July 1, 1872, against one of its stockholders?  That it had such jurisdiction before the enactment " concerning corporations for pecuniary profit," approved April 12, 1872, and in force July 1st of that year, is settled by *Culver* v. *Third National Bank,* 64 Ill. 528, and *Corwith* v. *Culver,* 69 id. 502; but, by the last named act, the remedy in such cases is limited to courts of equity.  Whether, on the facts proved in this particular case, a court of equity would grant relief, is immaterial; the question before us relates only to the jurisdiction of the court; and if a court of law had not jurisdiction it is sufficient to sustain the ruling below.

The 49th section of the act of April 18, 1872, is as follows:

" All acts or parts of acts, in conflict with the provisions of this act, are hereby repealed: *Provided,* that the repeal of said acts shall not affect any corporation existing under any such acts, or any rights or liabilities that may have accrued when this act shall take effect; but such rights and liabilities shall remain as though this act had not been passed."

The provisions relating to the remedy of creditors against stockholders being in conflict, that of the act of 1857 is, therefore, repealed except as to rights within the above saving clause, and it must, hence, be inquired whether appellants' rights are within that clause.  This would seem to be very easily answered.  They were not creditors of the corporation until in October and November, 1873, and hence they had no rights which were affected by the repeal.  The law in force when their indebtedness was contracted is the law still in force—the act of April 18, 1872—and if their claims are at all capable of being enforced against stockholders, that act compels them to resort to a court of equity.

But appellants argue that the 9th section of the act of 1857, which provided, " All the stockholders of every such company shall be, severally, individually liable to the creditors of

the company, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company prior to the time when the whole amount of its capital stock shall have been paid in, and a certificate thereof made and filed," vested an interest in the corporation and the stockholders which could not be taken away, without their consent, by subsequent legislation, and this is their argument:

"It appears that when Akin took his $2500 worth of stock, in 1869, $30,000 of the $50,000 capital stock had been taken, thus making the subscribed stock 32,500." Now, assuming that was all paid, but no 'certificate thereof' ever made and filed by a majority of the directors, as required by the act, it is clear that the corporation would be operating on a paid capital of $32,500, and a stockholders' liability of $32,500 more. That working capital ($65,000) constituted the life of the corporation. If the act of 1872 changed the liability of the stockholders, to the amount of the unpaid stock held by them respectively, it at a stroke took away half of the working capital of this company," etc.

It is very clear to us this is a total misapprehension of what constitutes a vested right. It assumes a party may have a vested right to not discharge a legal obligation he has assumed. Where a party subscribes for stock to a corporation, it is his legal duty to pay the amount of his subscription, and when the subscriptions are paid, it is the legal duty of the directors to make and file the required certificate. And thus the claimed vested right is based on the anticipation that these duties will not be performed, for if they are performed, that is an end of them. But "a right can not be considered as vested unless it is something more than a mere expectation, and has already become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." Cooley's Const. Lim. (1st Ed.) 359.

The section referred to was evidently solely designed for the benefit of creditors of the corporation, and is in the nature of a penalty to enforce the prompt and literal compliance with

the law in the organization of the corporations provided for by the act, so that creditors might not be misled by false and delusive representations in regard to the actual capital of the corporation, to the extent that such compliance would afford protection in that regard. It was not to give corporations a legal right to organize and act as such in violation of that act, or to authorize delinquent subscribers to the capital stock of corporations to make profit from their delinquencies.

We do not think *Denworth et al.* v. *Coolbaugh et al.* 3 Clark (Iowa), cited by appellants' counsel, pertinent here. In that case, the statute under consideration recognized the continued existence of the corporations organized under the former statute, with the rights, obligations and duties conferred and imposed by that statute, but authorized them to bring themselves within the provisions of the statute under consideration, by taking certain steps which had not been taken by the bank. Here, however, the statute requires no steps to be taken by the corporations in existence at the time it took effect, in order to bring them under it. The statute, by its own force, and without reference to any act of the corporators affected by it, became an obligatory law upon them, except as to the rights saved by the repealing clause.

It is conceded that, even after debts are contracted, laws merely changing the remedy for their collection are not liable to any constitutional objection; and this is well settled law. *Bronson* v. *Kinzie*, 1 Howard, 311; *Woodruff* v. *Trapnall*, 10 Howard, 190; *Curran* v. *State Bank*, 15 Howard, 304; *Hawthorne* v. *Calef*, 2 Wallace, 10.

We perceive no cause requiring us to disturb the judgment below, and it is, therefore, affirmed.

*Judgment affirmed.*