MELVILLE C. EAMES *et al.*

*v.*

ELIZABETH J. DORIS.

*Filed at Springfield March 28, 1882.*

1. STOCKHOLDERS—*remedy to enforce their liability—whether at law or in equity.* It has been held by this court that an action at law by a single creditor will lie against any stockholder of an insolvent corporation, to enforce an individual liability created by its charter;—but these rulings are not to be taken as a denial of the right to seek relief in a court of equity when there are equitable grounds therefor. The right to sue at law does not necessarily exclude the jurisdiction of a court of equity.

2. So where the personal liability of stockholders of a corporation is made, by statute, a common fund for the benefit of depositors of trust and savings funds, and the debts due such depositors greatly exceed the assets and such personal liability combined, so that the funds will be insufficient to discharge all of the claims upon it, a court of equity may, at the suit of a part of the creditors, on their own behalf and that of all other such creditors, take jurisdiction, and bring before it all the stockholders and depositors, and determine the several rights and liabilities, and adjust equities, marshal the fund, and distribute it *pro rata*, and in ·such case

enjoin the prosecution of suits at law by individual creditors against stock-holders, seeking to appropriate the entire and unequal benefit of such security.  The securing of a ratable distribution of such fund among all the creditors entitled to share, is a proper ground for equitable jurisdiction, and so is the avoidance of a multiplicity of suits.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a joint appeal, prosecuted by Lucius B. Otis, as receiver of the State Savings Institution, and Melville C. Eames and others, creditors of that institution, from a decree dissolving an injunction which had been granted to restrain Elizabeth J. Doris, with other creditors of the institution, from prosecuting actions at law against its share-holders to enforce the stock liability under section 9 of its charter, and sustaining the demurrer to the bill and petition for such injunction, and to enforce such liability.

The State Savings Institution was incorporated under an act approved February 21, 1861, and since 1863 had been doing business as a savings bank, in Chicago.  On September 1, 1877, Eames and other savings depositors filed their bill in chancery, in the circuit court of Cook county, for the appointment of a receiver over the institution, alleging its failure, a fraudulent assignment of its effects to Abner Taylor, the absconding of its officers, and the abandonment by-them of the banking institution.  On September 18, 1877, Lucius B. Otis was appointed receiver thereof.  On September 25, 1877, an amended and supplemental bill was filed by Eames and his co-complainants, and a petition in the same cause was also filed by the receiver, the relief sought by both being the enforcement of the stock liability under section 9 of the charter of the institution, for the benefit of all the creditors interested, and to enjoin indi-vidual creditors from prosecuting actions at law in their own behalf against such stockholders.  On November 21, 1877, a

decree was entered *pro confesso,* upon the amended and supplemental bill, against the institution, and on December 10, 1877, an injunction was granted restraining the prosecution of suits at law for the enforcement of such stock liability.

On March 14, 1881, in pursuance of leave given, the complainants filed a second amended and supplemental bill, and the receiver an amended and supplemental petition. This bill averred that complainants were depositors in the institution, suing for themselves and all others similarly situated; that on August 25, 1877, the institution assigned its effects to Abner Taylor; that shortly before such assignment many of its stockholders had transferred their shares to the institution, amounting to about 2000 shares; that the assets were delivered to Taylor, and thereupon its officers and trustees abandoned their trust, and its president and cashier departed; that for a long time prior thereto there had been great mismanagement and waste of assets and deposits; that Spencer, the president, had converted to his own use $479,-177.40 of assets, besides interest; that the capital stock was 5000 shares, of $100 each, Spencer holding about 2700 shares; that the transfer of their stock by the trustees, being stockholders, to the institution, was made shortly before the assignment, and when they knew that their gross mismanagement had rendered it insolvent, and that under color of such transfer by such trustees and stockholders, they took out of the assets either their own notes or other obligations or securities, in fraud of the creditors.

The bill further averred, that by section 9 of the charter of the institution it was provided as follows: "Each stockholder of this corporation, hereby created, shall, as to the trust funds and saving funds deposited therewith, be individually liable, to the amount of his share or shares of the capital stock, for all losses or deficiencies that may occur while he was such stockholder, which individual liability

shall continue for six months after transfer of his said stock." The bill averred that the stockholders should pay into court a sum equal to the par value of their stock for the benefit of the trust and saving funds, or that the receiver receive the same for the benefit of those interested; that the losses and deficiencies of the trust funds and saving funds exceed $1,000,000; that complainants are depositors interested in such trust and saving funds, and entitled to share equally, with others so interested, in any moneys recovered from such stockholders under section 9; that the number of savings depositors similarly interested is more than 13,000; that since filing the original bill many persons claiming to be interested as creditors in such trust and saving funds have commenced their several actions at law against stockholders, to enforce the liability under section 9 for their individual benefit, seeking to obtain priority over complainants and others interested in the trust and saving funds.

The bill prayed that the liability under section 9 be decreed to be in favor of the trust funds and saving funds, as such; that the stockholders pay into court, or to said receiver, the sums due by them under section 9, in order that the same be distributed equally; that the persons interested in and entitled to such trust and saving funds be ascertained, and the sums recovered from the stockholders be distributed *pro rata* among them; that the receiver be continued, and the creditors be enjoined from prosecuting their actions against the stockholders under section 9.

The amended and supplemental petition of Otis, receiver, avers his appointment September 18, 1877, and continuance in the discharge of his duties since, with substantially the same averments as to the mismanagement and failure of the institution and fraud of its officers, and otherwise as contained in the amended and supplemental bill, avers his right to enforce the liability under section 9, and prays the same relief as the amended and supplemental bill.

To this second amended and supplemental bill, and to the receiver's amended and supplemental petition, appellee, one of the creditors who had brought such actions at law, filed a general demurrer for want of equity, which the court sustained, dissolved the injunction granted on the first amended and supplemental bill, and on the receiver's petition, as to appellee, and dismissed both such bill and petition, as to appellee, for want of equity, which order was affirmed on appeal to the Appellate Court for the First District, and the complainants and the receiver appeal from such order of affirmance.

Mr. E. B. SHERMAN, and Mr. J. L. HIGH, for the appellants:

The liability of shareholders, under section 9 of the State Savings Institution, may be regarded in a double aspect: 1. As an asset of the bank, which the bank could have enforced in the event of a deficiency in the trust funds and savings funds. 2. As a security to the trust and saving funds as an entirety, for the equal benefit of all creditors interested in such funds.

1. As an asset of the bank it passed to the receiver, by virtue of his appointment, and under the deed of assignment from the bank to him, as receiver. The liability being as to the trust and saving funds as an entirety, can only be enforced as an entirety, and for the benefit of the entire body of creditors, who are represented by the receiver. The receiver, therefore, is the proper person to enforce the stock liability by a proceeding in equity, for the common benefit of all persons interested in the trust and saving fund. *Osgood* v. *Laytin,* 5 Ab. Pr. (N. S.) 1; S. C. 42 N. Y. (3 Keyes,) 521; *Osgood* v. *Ogden,* 43 N. Y. (4 Keyes,) 70; *Story* v. *Furman,* 25 N. Y. 214; *Calkins* v. *Atkinson,* 2 Lansing, 12; *Attorney General* v. *Guardian Mutual Life Ins. Co.* 77 N. Y. 272; *Pollard* v. *Bailey,* 20 Wall. 520. See, also, *Munger* v. *Jacobson, Receiver,* 99 Ill. 349.

2.  The liability being not to the creditors as such, but to the trust and saving fund as a whole, may be enforced in equity by creditors interested in such fund, suing for themselves and all others similarly interested.  The fund, when collected, is to be distributed *pro rata* among the creditors interested therein, under the doctrine that equality is equity, and no creditor of the two classes interested can be allowed priority over his co-creditors.  Equity alone can marshal the assets and distribute the fund, under section 9, ratably among those interested, and as an incident to this relief it must enjoin individual creditors from suing at law.  *Harris* v. *First Parish in Dorchester,* 23 Pick. 112; *Crease* v. *Babcock,* 10 Metc. 525; *Coleman* v. *White,* 14 Wis. 702; *Bank of St. Marys* v. *St. John,* 25 Ala. 566; *Matthews* v. *Albert,* 24 Md. 527; *Norris* v. *Johnson,* 34 Md. 485; *Briggs* v. *Penniman,* 8 Cow. 387; *Pollard* v. *Bailey,* 20 Wall. 520; *Carrol* v. *Green,* 92 U. S. 509; *Hornor* v. *Henning,* 93 id. 228; *Merchants' Bank* v. *Stevenson,* 10 Gray, 232; *Same* v. *Same,* 5 Allen, 398; *Moore* v. *Reynolds,* 109 Mass. 473.

Mr. GEORGE BASS, Mr. ELLIS S. CHESBROUGH, Jr., Mr. EDWARD M. BAYLEY, and Mr. FARLIN Q. BALL, for the appellee :

This double liability is not an asset of the bank, enforcible by it in the event of a deficiency in the several funds, but belongs to the creditors.  *Crease* v. *Babcock,* 10 Metc. 525; *Merchants' Bank* v. *Stevenson,* 10 Gray, 232; *Same* v. *Same,* 5 Allen, 398; *Moore* v. *Reynolds,* 109 Mass. 473; *Coleman* v. *White,* 14 Wis. 702; *Story* v. *Furman,* 25 N. Y. 215; *Bank of St. Marys* v. *St. John,* 25 Ala. 566; *Matthews* v. *Albert,* 24 Md. 527; *Norris* v. *Johnson,* 34 id. 485; Morse on Banking, 501, cited by appellant.  Also, *Bank of Poughkeepsie* v. *Ibbotson,* 24 Wend. 473; *Tracy* v. *Yates,* 18 Barb. 152; *Garrison* v. *Howe,* 17 N. Y. 458; *Woodruff* v. *Chittenden,* 4 Bosw. 406; *Judson* v. *Rossie G. Co.* 9 Paige, 598; *Burr* v. *Wilcox,* 22 N. Y. 557; *Walker* v. *Crain,* 17 Barb. 119; *Moss* v. *Oakley,*

2 Hill, 265; *Van Hook* v. *Whitlock*, 3 Paige, 409; *Atwood* v. *R. I. Ag. Bank*, 1 R. I. 376; *Perry* v. *Turner*, 55 Mo. 418; *Norris* v. *Johnson*, 34 Md. 485; *Demming* v. *Bull*, 10 Conn. 409; *Paine* v. *Stewart*, 33 id. 516; *Hawthorne* v. *Calef*, 2 Wall. 10; *Bullard* v. *Bell*, 1 Mason, 243; *Dutcher* v. *Assignee of Central Bank*, 12 Blatchf. 435; *Stanley* v. *Stanley*, 26 Maine, 191; *Dozier* v. *Thornton*, 19 Ga. 325; *Lane* v. *Morris*, 8 id. 468; *Bank of United States* v. *Dallam*, 4 Dana, (Ky.) 574.

The receiver takes only the property and rights of the bank. High on Receivers, secs. 315, 204, 205, 208; *Curtis* v. *Leavitt*, 15 N. Y. 44; *Lincoln* v. *Fitch*, 47 Mo. 456.

The remedy, at the election of the creditor, is at law. *Norris* v. *Johnson*, 34 Md. 485; *Garrison* v. *Howe*, 17 N. Y. 458; *Atwood* v. *R. I. Ag. Bank*, 1 R. I. 376; *Perry* v. *Turner*, 55 Mo. 418; *Paine* v. *Stewart*, 33 Conn. 516; *Bullard* v. *Bell*, 1 Mason, 243; *Stanley* v. *Stanley*, 26 Maine, 191; *Dozier* v. *Thornton*, 19 Ga. 325; *Hawthorne* v. *Calef*, 2 Wall. 10.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bank, here, by its charter, was empowered to transact ordinary commercial and other business, as well as to receive saving deposits and trust funds. As regards its commercial and other like business, no stock liability was created to guard against losses and deficiencies. The liability is confined to losses and deficiencies "as to the trust funds and saving funds deposited."

This court has frequently held that an action at law by a single creditor will lie against any stockholder of an insolvent corporation, to enforce an individual liability created by its charter. *Culver* v. *Third National Bank*, 64 Ill. 528; *Corwith* v. *Culver*, 69 id. 502; *Tibballs* v. *Libby*, 87 id. 142; *Fuller* v. *Ledden*, 87 id. 310; *Arenz* v. *Weir*, 89 id. 25; *McCarthy* v. *Lavasche*, 89 id. 270. But the court never has held that there might not be resort to a court of equity to

enforce the liability, or that one creditor might not, at the instance of the whole body of the other creditors, be restrained from the prosecution of his individual suit, where its prosecution would be to the prejudice of the equal interest of all the creditors.

*Wincock* v. *Turpin,* 96 Ill. 135, is the only case in this court where there has been a contest like the present, between the receiver and creditors suing as a whole, in equity, for the common benefit of all, upon the one hand, and upon the other a single creditor suing for himself. And although in that case the depositor was left free to prosecute his individual suit at law, it was under the circumstances and with the implication appearing. in the following language there used by the court: "It may be a state of facts might exist which would authorize a court of equity to bring before it all the stockholders and depositors, and determine their rights and adjust equities, marshal the fund, and distribute it *pro rata;* but no such case is made by this bill, and until such a case shall be made we must leave the depositors to pursue their remedies under the law." We think the state of facts thus suggested as authorizing the interposition of a court of equity is here presented.

The liability under section 9 is created for all losses and deficiencies as to the trust funds and saving funds deposited, that is, as to the depositors of trust funds and saving funds. The liability constitutes a fund for the benefit of. all of these two classes of creditors, and they are entitled to share in it in proportion to the amount of their debts. The debts here largely exceed the assets and this liability combined, so that the fund will be insufficient to discharge all of the claims upon it. If individuals of these two classes of savings and trust depositors be allowed to prosecute their separate suits, they may recover payment of their demands in full, while others of the classes having claims equally equitable, may be enabled to obtain no payment whatever, or but a partial one. Hence

the propriety, in the case of such a deficiency in a common
fund for the common benefit of creditors, of a proceeding in
equity by one or more in behalf of all the creditors, in order
that the equitable principle that equality is equity, may be
applied,—that single creditors, by individual suits, may be
prevented from an appropriation to themselves of the entire
or unequal benefit of the security, to the exclusion of others
equally entitled, and that there may be a collection, and *pro
rata* distribution of the whole fund among all the creditors.

The cases are numerous which recognize a liability of such
a character as that created by section 9, as a common fund
for the benefit of all the creditors who are entitled to share
in it, and that the securing of a ratable distribution of it
among all such creditors is a proper ground for the jurisdic-
tion of a court of equity.   See *Merchants' Bank* v. *Stevenson,*
5 Allen, 401; *Crease* v. *Babcock,* 10 Metc. 532; *Briggs* v.
*Penniman,* 8 Cow. 387; *Hornor v. Henning,* 93 U. S. 228;
*Low* v. *Buchanan,* 94 Ill. 81; *Harper* v. *Union Manufacturing
Co.* 100 id. 225.   The avoiding of a multiplicity of suits is a
further ground of equitable jurisdiction.

As before intimated, former decisions in similar cases,
that the creditor may sue the stockholder at law on such a
liability, are not to be taken as in denial of the right to seek
relief in a court of equity when there are equitable grounds
therefor.   The remedy at law is not adequate in such a case
as this.

As recognized by some courts, the creditors, in the case of
such a personal statute liability of stockholders, have a con-
current remedy by a suit at law, or by a bill in equity for the
enforcement of the liability.   *Bank of Poughkeepsie* v. *Ibbot-
son,* 24 Wend. 473; *Van Hook* v. *Whitlock,* 3 Paige, 409;
*Norris* v. *Johnson,* 34 Md. 485; *Perry* v. *Turner,* 55 Mo. 418;
*Dozier* v. *Thornton,* 19 Ga. 325.   The authorities sufficiently
show that the right to sue at law does not necessarily exclude
the jurisdiction of a court of equity.

As to the question which has been discussed, whether this liability is an asset of the corporation, and the receiver has the right to sue for its enforcement, we do not stop to consider it, as we do not deem it material. The petition of the receiver is with the concurrence of the complainants, and is coöperative with their bill to the same end of obtaining the relief of a *pro rata* distribution of the fund among all these creditors, and is but a part of their proceeding, and hence we do not regard it as of any practical importance that such petition should be passed upon separately. The question is, whether upon the face of the whole proceeding there appears an equitable right to the relief demanded. We think there does, and that the circuit court erred in sustaining the demurrer.

The order of affirmance of the Appellate Court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*

Mr. Justice Walker: I concur in the conclusion reached in this case, on the ground that it is properly distinguished from *Wincock* v. *Turpin, supra.*